UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 17-24158-CIV-MORENO

REVA, INC.,

    Plaintiff,

vs.

HEALTHKEEPERS, INC. *et al.*,

    Defendants.
_____/

## ORDER REMANDING CASE TO STATE COURT

### I.   Background

This case involves a dispute over the reimbursement for underpaid emergency services between Plaintiff, REVA, Inc., a healthcare provider, and several health insurer Defendants. REVA is a fixed-wing air ambulance company that provides emergency air ambulance services to Defendants' members. The essence of the Complaint is that Defendants underpaid REVA's claims for emergency services covered under the member policies. On September 19, 2017, REVA filed the instant action in the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. The Complaint alleges causes of action against all Defendants for: unjust enrichment (Count I), quantum meruit (Count II), a violation of Florida Statute 627.64194 against Defendant Blue Cross & Blue Shield of Florida, Inc. only (Count III), and a violation of Florida Statute 641.513 against Defendant Health Options, Inc. only (Count IV). On November 13, 2017, Defendants removed the action to this Court. On May 24, 2018, REVA filed a motion seeking to remand this action to state court. For the following reasons, the case is remanded.

### II.   Legal Standard

Under 28 U.S.C. § 1441, a case filed in state court can be removed to federal court if the district court has original jurisdiction, which exists if there is federal question jurisdiction under 28 U.S.C. § 1331 or diversity jurisdiction under 28 U.S.C. § 1332. Federal question jurisdiction requires that a case "arise under" the "Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Generally, a case "arises under" federal law if federal law creates the cause of action or if a substantially disputed issue of federal law is a necessary element of a state law claim. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 13 (1983). A defendant bears the burden of proving by a preponderance of the evidence that federal jurisdiction exists. *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001). "A defendant seeking removal may submit affidavits, declarations or other evidence to meet its burden of showing a jurisdictional basis for removal." *Land Trust Serv. Corp. for Trust No. 1009CB v. Mortgagelt, Inc.*, No. 14-CV-23885, 2014 WL 12605138, at *1 (S.D. Fla. Dec. 29, 2014).

A district court is required to "'strictly construe the right to remove' and apply a general 'presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand.'" *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) (internal punctuation marks omitted) (quoting *Russell Corp. v. Am. Home Assur. Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001)). However, the court must be equally as vigilant in protecting a defendant's right to proceed in federal court as it is in respecting the state court's right to retain jurisdiction. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 766 (11th Cir. 2010) (citing *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907)).

## III. Discussion of Each Issue w/ Recommendation

REVA seeks to remand this action to state court because: (1) its claims are not preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* and (2) the federal officer removal statute, 28 U.S.C. § 1442(a)(1), does not apply.

2

A. **Complete Preemption**[1]

The Supreme Court has articulated a two prong test for determining whether a state law claim is completely preempted by ERISA: (1) "[the plaintiff], at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)"[2] and (2) "there is no other independent legal duty that is implicated by a defendant's actions." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004).

i. **Whether REVA's Claims Could Have Been Brought Under Section 502(a)**

Under *Davila*'s first prong, Defendants must show that REVA's claims could have been brought under section 502(a) of ERISA. To meet this prong, "the plaintiff's claim[s] must fall within the scope of ERISA, and the plaintiff must have standing to sue under ERISA." *Gables Ins. Recovery v. United Healthcare Ins. Co.*, 39 F. Supp. 3d 1377, 1384 (S.D. Fla. 2013) (Altonaga, J.). Both requirements must be met. *Id.*

a. **Whether REVA's Claims Fall Within the Scope of ERISA**

"To address whether [a] claim falls within the scope of ERISA, the Eleventh Circuit has adopted a distinction between two types of claims . . . 'those challenging the "rate of payment" pursuant to the provider-insurer agreement, and those challenging the "right to payment" under the terms of an ERISA beneficiary's plan.'" *Sheridan Healthcorp, Inc. v. Aetna Health Inc.*, 161 F. Supp. 3d 1238, 1245 (S.D. Fla. 2016) (citing *Borrero v. United Healthcare of N.Y., Inc.*, 610 F.3d 1296, 1302 (11th Cir. 2010)). "Right of payment claims fall within the scope of ERISA.

---

[1] REVA does not dispute that Defendants have received and administered numerous claims from REVA for providing air ambulance services to individuals who are beneficiaries of ERISA group health plans. *See, e.g.*, D.E. 1-2 ¶¶ 21-33 and D.E. 1-3 ¶¶ 11-22.

[2] This section of ERISA provides a private right of action to plan participants and beneficiaries. *See* 29 U.S.C. § 1132(a)(1)(B).

Rate of payment claims do not." *La Ley Recovery Sys.-OB Inc. v. Blue Cross & Blue Shield of Fla., Inc.*, No. 14-23417-CIV, 2014 WL 5523147, at *3 (S.D. Fla. Oct. 31, 2014) (Gayles, J.).

REVA likens this dispute to a "rate of payment" case. *See* D.E. 1-1 ¶ 35 ("For each claim at issue, even though the Home Plan made partial payment to REVA, the rate of reimbursement did not reflect REVA's usual and customary billed charges or the reasonable value of REVA's services. Instead, Defendants significantly underpaid REVA . . ."). Defendants counter that because REVA is an out-of-network[3] provider—an undisputed fact—the rate-of-payment versus right-of-payment distinction is inapplicable. From a practical perspective, Defendants submit that an in-network provider generally has a written agreement between the insurer and the provider governing their contractual relationship (including payment), that is separate and apart from the terms of a plan member's ERISA plan. In that case, the in-network provider could challenge the terms of the provider agreement, if it is not adhered to, and the provider can challenge the rate which has been paid—which Defendants submit is entirely independent of, and has no bearing on, the terms of the ERISA plan. Whereas for out-of-network providers, the amount an insurer may be obligated to pay the provider is dictated by the terms of the ERISA plan.

Defendants rely primarily on Magistrate Judge O'Sullivan's Report and Recommendation in *Apex Toxicology, LLC v. United Healthcare Ins. Co.*, No. 16-62768-CIV, 2017 WL 7806152, at *1 (S.D. Fla. June 26, 2017).[4] In *Apex*, the plaintiff provided toxicology laboratory services to patients admitted to substance abuse facilities. *Id.* After rendering services, the plaintiff submitted claims directly to the defendant insurance company for payment. *Id.* "All

---

[3] "Out-of-network" providers "do not have signed contracts outlining the terms of reimbursement for treatment provided to . . . plan subscribers." *Emergency Servs. of Zephyrhills, P.A. v. Coventry Health Care of Fla., Inc.*, 281 F. Supp. 3d 1339, 1342 (S.D. Fla. 2017) (Altonaga, J.).

[4] Magistrate Judge O'Sullivan's Report and Recommendation was never adopted by this Court because the plaintiff voluntarily dismissed the case three days after it was issued. *See* No. 16-CV-62768 (D.E. 31).

of the plaintiff's claims are based on the allegedly fraudulent codes used by the defendant in the [Electronic Provider Remittance Advice] to wrongfully deny the plaintiff's requests for payment." *Id.* at *5. In essence, the defendant insurer denied the claims. In recommending denial of the plaintiff's motion to remand, Magistrate Judge O'Sullivan found that it was not a "rate of payment" case because "[t]here can be no provider agreement in cases involving an out-of-network provider." *Id.*; *see also All. Med, LLC v. Blue Cross & Blue Shield of Georgia, Inc.*, No. 2:15-CV-00171-RWS, 2016 WL 3208077, at *1 (N.D. Ga. June 10, 2016) (holding that because the out-of-network provider plaintiffs did not hold provider agreements with the insurer defendants, the claims were within the scope of ERISA). In addition, Defendants rely on the notion that the amounts that REVA is entitled to are set out in the terms of the members' health plans in question. Thus, Defendants posit, whether REVA has been underpaid for its services will ostensibly depend on the Court's interpretation of the ERISA plans. *See Gables Ins. Recovery*, 39 F. Supp. 3d at 1388 ("If the right to payment derives from the ERISA benefit plan as opposed to another independent obligation, the resolution of a right to payment dispute requires an interpretation of the plan."). For those reasons, Defendants argue the claims necessarily depend on the terms of the ERISA plans in question and thus fall within the scope of ERISA.

REVA does not allege a provider agreement exists between it and Defendants. In fact, the declaration of Lise Strother, Litigation Management Consultant for Defendants Blue Cross and Blue Shield of Florida, Inc. and Health Options, Inc., states that "During the time frame in dispute, REVA was an out-of-network provider that did not have a participating provider contract with either Florida Blue or Health Options." D.E. 1-2 ¶ 15. REVA points to the Eleventh Circuit's decision in *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, as not

5

being dispositive here because it does not discuss the application of the "rate of payment" distinction to out-of-network providers. 591 F.3d 1337, 1347 (11th Cir. 2009). Rather, *Conn. State* held that two in-network providers' claims were preempted by ERISA because the claims were "hybrid" and involved both "rate of payment" and "right of payment" disputes under the provider agreements. 591 F.3d at 1350-51. Indeed, courts in this district have found the in-network versus out-of-network distinction to be the linchpin in determining whether a plaintiff's state law claims fall within the scope of ERISA. *Compare Apex*, 2017 WL 7806152, at *1 (finding that an out-of-network provider's claims were preempted by ERISA because there was no provider agreement to base a "rate of payment" claim), *with Hialeah Anesthesia Specialists, LLC v. Coventry Health Care of Fla., Inc.*, 258 F. Supp. 3d 1323 (S.D. Fla. 2014) (Gayles, J.) (finding that the "right of payment" versus "rate of payment" distinction applies to out-of-network providers who bring claims under implied contract theories). The question here is whether REVA's claims—as an out-of-network provider—are "rate of payment" or "right of payment" in nature.

REVA's claims are more akin to a rate of payment dispute because REVA does not allege that Defendants **failed** to pay, but rather that Defendants "grossly **underpaid** REVA" for its services. D.E. 1-1 ¶ 2. (Emphasis added). "The distinction between rate of payment and right to payment, therefore, is whether the claims are payable at all. While a rate of payment challenge does not necessarily implicate an ERISA plan, a challenge to the right to payment under an ERISA plan does." *Gables Ins. Recovery*, 39 F. Supp. 3d at 1384. REVA alleges that it presented claim forms to Defendants with an explanation of benefits for each patient and submitted bills seeking reimbursement of its usual and customary charges. D.E. 1-1 ¶¶ 26-27. Defendants

acknowledged coverage, but paid REVA less than what REVA submitted in its claim forms. *Id.* ¶ 27.

The Parties do not dispute that the services provided by REVA were covered by the member plans and that Defendants made payments to REVA for said services. It is clear, then, that REVA is not challenging denials of coverage, because the impetus for this lawsuit, the Complaint alleges, is that REVA was not **fully** compensated for services it performed. Thus, Defendants attempt to recast REVA's entitlement to payment through an ERISA lens is unavailing. Although a contract between the Parties—written or oral—is not alleged, such lack of an agreement does not render REVA's claims completely preempted by ERISA. The Complaint's theories of unjust enrichment and quantum meruit suggest that REVA will attempt to frame the relief sought under quasi-contractual theories of liability. The Court finds persuasive the cases from courts in this district that have found "rate of payment" disputes even in the absence of a formalized agreement. *See REVA, Inc. v. United Healthcare Ins. Co., et al.*, No. 17-24210-cv-Scola (D.E. 37) (S.D. Fla. June 11, 2018); *Hialeah Anesthesia Specialists*, 258 F. Supp. 3d at 1329-30; *Revoc. Vill. of Umatilla v. United Behavioral Health, Inc.*, No. 15-62374-cv-Zloch (D.E. 37) (S.D. Fla. 2016). In any event, *Apex* is distinguishable because the parties were not conflicted over "rate of payment" as the defendants in that case never made any payments. 2017 WL 7806152, at *5. Whereas here, Defendants compensated REVA, but at a rate lower than what REVA expected. Consequently, the Court finds that REVA's claims fall outside the scope of section 502(a) of ERISA and no further analysis under *Davila* is necessary. *See Orthopaedic Care Specialists, P.L. v. Blue Cross & Blue Shield of Fla., Inc.*, No. 12-81148, 2013 WL 12095594, at *2 (S.D. Fla. Mar. 5, 2013) (remanding case after finding only that the defendant failed to meet the first requirement of the first prong of *Davila*).

Indeed, the Court is also cognizant that "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly," *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999), "and resolve any doubts regarding the existence of federal jurisdiction in favor of the non-removing party," *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998). Here, Defendants have failed to meet their burden of proving by a preponderance of the evidence that federal subject matter jurisdiction exists.

## IV. <u>Conclusion</u>

Accordingly, REVA's claims are not preempted. It is

**ADJUDGED** that REVA's Motion to Remand **(D.E. 55)** is GRANTED and the case is REMANDED to the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County. It is further

**ADJUDGED** that the case is CLOSED and all pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this ___6___ of July 2018.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record